UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THAYER EASTMAN, | |
| Plaintiff, | |
| v | |
| Raymond Kelly Richardson, in his Official Capacity as Superintendent of Police of the City of Lowell, | |
| Defendant. | |

**COMPLAINT**

Plaintiff THAYER EASTMAN alleges as follows:

1. This lawsuit challenges the Defendant's acts of refusing to accept or process firearms license applications until the COVID-19 State of Emergency, declared by the Governor of Massachusetts, is lifted.

2. The need for personal self-defense is most acute during times of uncertainty and crisis—when law enforcement services may not be available or may not be reliably available, and when (as now) criminal offenders may be released from custody or may be less likely to be taken into custody in the first place. It is precisely times like these that the Plaintiff needs to be able to exercise his fundamental rights to keep and bear arms.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

4. This Court has personal jurisdiction over the Defendant because he has acted, acts and threatens to act under the color of laws, policies, customs and/or practices of the Commonwealth of Massachusetts and each did so, does so and threatens to do so within the geographic confines of the Commonwealth of Massachusetts.

5. Venue is proper pursuant to 28 U.S.C. § 1391.

6. The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(C) because all parties that reside in the District reside in the Eastern Division.

## PARTIES

7. Plaintiff THAYER EASTMEN is a natural person residing in Lowell, Middlesex County, Massachusetts.

8. Defendant RAYMOND KELLY RICHARDSON ("Superintendent Richardson") is sued in his individual capacity and in his official capacity as Superintendent of the Lowell Police Department (Middlesex County), responsible for general law enforcement functions within the City of Lowell, including administration of Firearms Licensing.

## CONSTITUTIONAL PROVISIONS

9. The Second Amendment to the United States Constitution provides: A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

10. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008).

11. The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens

of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

12. The Second Amendment "is fully applicable to the States." McDonald v. City of Chicago, 561 U.S. 742, 750 (2010); see also id. at 805 (Thomas, J., concurring)

13. The "core lawful purpose" of the right to keep and bear arms is "self-defense." Heller, 554 U.S. at 571, 630; accord McDonald, 561 U.S. at 767-68.

14. The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Heller, 554 U.S. at 635.

## PERTINENT STATUTES AND REGULATIONS

15. It is unlawful to "own or possess" any handgun, rifle or shotgun unless one holds either a Firearms Identification card ("FID") or a License to Carry Firearms ("LTC"). See M.G.L. c. 140, §§ 129B-129C; id. c. 269, § 10(a,h).

16. A person seeking a FID or LTC must meet specified requirements related to, inter alia, age, criminal background, and mental fitness. See M.G.L. c. 140, § 129B(1)(i)-(xi); id. § 131(d)(i)-(x). Furthermore, licensing authorities can deny FIDs and LTCs to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety." See id. § 129B(1)(b), (d); id. § 131(d). Finally, a person must also complete state mandated training. See id. at § 131P(a).

17. It is also illegal to possess "ammunition" unless one holds either a FID or LTC. See M.G.L. c. 140, §§ 129B-129C; id. c. 269, § 10(h).

18. As a general proposition, it is illegal to sell any type of firearm (handgun, rifle or shotgun) in Massachusetts unless the seller is a licensed firearms dealer. See M.G.L. c. 140, § 128.

19. If is unlawful for any person to sell a handgun to any person without a License to Carry Firearms or both an FID Card and a Permit to Purchase. See M.G.L. c. 140, § 129C.

20. On information and belief, the Commonwealth of Massachusetts has not issued a Permit to Purchase in over 20 years.

21. Persons seeking a License to Carry or FID Card may submit an application to the local licensing authority. *See* M.G.L. c. 140, §131(d), §129B(1)

22. There are no provisions in the law that permit a licensing authority to refuse to accept and process firearms license applications.

## GOVERNOR BAKER'S EXECUTIVE ORDERS

23. As the Court is aware, a novel virus has caused a pandemic illness that is spreading throughout the world, including the United States and the Commonwealth of Massachusetts. It is unclear how long it will take for this pandemic illness to run its course, and estimates have ranged from one month to 18 or more months.

24. In March of 2020, Massachusetts Governor Charles Baker declared a state of emergency in response to the COVID-19 pandemic and subsequently issued orders which forcing "[a]ll businesses and other organizations that do not provide COVID-19 Essential Services [to] close their physical workplaces and facilities ('brick-and-mortar premises') to workers, customers, and the public". Since that time various steps have been taken to reopen businesses and other organizations.

25. Nothing in the Governor's COVID orders require or permit a licensing authority to refuse to accept and process firearms license applications.

## INJURY TO THE PLAINTIFF AND OTHERS LIKE HIM

26. The Plaintiff has been trying, unsuccessfully, to submit a Firearms Application to the Lowell Police Department since June 3, 2020.

27. On June 3, 2020, the Plaintiff called the Lowell Police Department at 12:15pm and left a message with contact info. Nobody returned his call.

28. On June 5, 2020, the Plaintiff called the Lowell Police Department at 9:25am and left a message with contact info. Nobody returned his call.

29. On June 8, 2020, at 11:25am the Plaintiff was told by the detective who answered the phone, after calling the same number that they were not taking new license firearms applications at this time due to Covid-19 and the inability to take fingerprints. The detective instructed the Plaintiff to check back around the end of the month and hopefully things would change.

30. The Plaintiff sent an email to the city councilors and city manager asking for information about the licensing issues. Nobody responded.

31. The Plaintiff called the Lowell PD firearms licensing bureau on 6-30-2020 at 10:24am and was told by the Detective answering that they were still not taking new license applications and would likely only start once the state of emergency had been lifted.

32. On information and belief, the Lowell PD continues fingerprinting criminal defendants that have been arrested.

**CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983**

33. Defendants' acts refusing to accept and process firearms license applications operate to completely prohibit law-abiding individuals from lawfully acquiring and possessing firearms for the purpose of protecting one's self and family (or indeed, for any other lawful purpose).

34. States and localities do not have the power to prohibit the keeping and bearing of arms, nor to

close off the channels of licensing by which people obtain firearms and ammunition.

35. The Defendant's policies, practices, customs and enforcement actions related to them, have and continue to directly or effectively prohibit the Plaintiff, and other similarly situated members of the public from possessing firearms, thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

## PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

i. A declaratory judgment that defendant's refusal to accept and process firearms license applications prevents the lawful possession of firearms and thus violate the Second and Fourteenth Amendments;

ii. a preliminary and/or permanent injunction restraining Defendant and his officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from refusing to accept and process firearms applications;

iii. such other and further relief, including injunctive relief, against the Defendant, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

iv. attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law.

Dated: July 24, 2019

Respectfully submitted,

Thayer Eastman,

By his attorney,

 /s/ J. Steven Foley
J. Steven Foley

BBO # 685741
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, MA 01609
Tel: 508.754.1041
Fax: 508.739.4051
JSteven@attorneyfoley.com